IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DANA DIXON SIMRELL, as Administratrix of the Estate of Frank Dixon,** ] ] ] ] **Plaintiff,** ] ] v. ] **TEVA PHARMACEUTICALS USA, INC., et al.,** ] ] ] **Defendants.** ] | Case No. 2:18-cv-00477-KOB |

## **MEMORANDUM OPINION**

This matter is before the court on Plaintiff's Motion to Remand this case to the Circuit Court of Jefferson County, Alabama. (Doc. 11). On March 27, 2018, Defendants Eon Labs, Inc. and Teva Pharmaceuticals USA, Inc., removed this case based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1). The removing Defendants concede the parties are not completely diverse, but argue that Plaintiff fraudulently joined and/or misjoined the non-diverse Defendants and the court should dismiss them from the action.

As explained below, this court concludes that the removing Defendants failed to meet their burden of showing by clear and convincing evidence that no Alabama State court could find that Plaintiff's Complaint states a valid cause of

1

action against the resident Defendants. Therefore, the removing Defendants failed to establish fraudulent joinder, and Plaintiff's motion to remand is due to be GRANTED.

## II. FACTUAL BACKGROUND

On February 16, 2018, Plaintiff filed this action against Defendants Eon Labs, Inc.; Teva Pharmaceuticals USA, Inc.; CVS Health Corporation; Wyeth Pharmaceuticals, Inc.; Dr. William Maclean; and Dr. Adeeb Thomas in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1).[1] Plaintiff sued the Defendants for their respective roles in allegedly causing Mr. Dixon's death. (Doc. 1-1). The parties agree that the Defendant physicians are the only named Defendants who are Alabama citizens.

According to the Complaint, Mr. Dixon died on February 18, 2016, of "amiodarone toxicity and amiodarone induced interstitial lung disease." (Doc. 1-1 at 2). The Complaint alleges the Defendant physicians prescribed Mr. Dixon's amiodarone, but never informed him of the risks associated with the drug or that he was taking the drug for an off-label use. (*Id.* at 5, 13). Plaintiff also claims the doctors "overprescribed" the drug and continued prescribing it even after Mr. Dixon began suffering severe side effects. (*Id.* at 8).

---

[1] Plaintiff also sued 10 fictitious defendants. The court disregards them for purposes of determining fraudulent joinder. 28 U.S.C. § 1441(b)(1).

Aside from the facts described above, the Complaint contains no further allegations or details regarding the Defendant physicians' treatment of Mr. Dixon or the basis for their potential liability.

## II. LEGAL STANDARD

A defendant may remove a case from state court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). Generally, federal courts have jurisdiction over civil cases where the amount in controversy exceeds $75,000 and complete diversity between the parties exists. *See* 28 U.S.C § 1332; *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("every plaintiff must be diverse from every defendant").

Even if complete diversity is not present, an action may still be removable if the plaintiff fraudulently joined the non-diverse parties to avoid federal jurisdiction. *See Triggs*, 154 F.3d at 1287. Joinder is fraudulent in two circumstances: 1) where no possibility exists that the plaintiff can prove a cause of action against the resident defendant; or 2) where the complaint contains outright fraud in the pleading of jurisdictional facts. *See id.* The Eleventh Circuit has also recognized a related theory—fraudulent misjoinder. Fraudulent misjoinder occurs when a plaintiff joins claims against a non-diverse defendant to the claims against a diverse defendant even though the claims share "no real connection." *See id.* at 1289.

The court determines whether a party has been fraudulently joined "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). To avoid remand, the removing party must demonstrate by clear and convincing evidence that a plaintiff fraudulently joined a resident defendant. *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 n.2 (11th Cir. 2007). To do so, the removing party must show that the plaintiff could not possibly state a claim against the resident defendant in state court. *Triggs*, 154 F.3d at 1287. *See also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[If] there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.").

## III. DISCUSSION

### *Fraudulent Joinder*

Plaintiff 's Complaint asserts two counts against the Defendant physicians—the only two non-diverse Defendants in this case. The first count against them (Count Three of the Complaint) claims that the doctors acted negligently and/or wantonly to cause or allow Mr. Dixon's injuries. The second count against the doctors (Count Four) alleges they violated the Alabama Medical Liability Act by

breaching their legal duty of reasonable care, skill, and diligence in treating Mr. Dixon.

To support these claims, Plaintiff alleges the Defendant physicians negligently cared for and treated Mr. Dixon; negligently prescribed him amiodarone; negligently prescribed him amiodarone for off-label uses not approved by the FDA and in violation of state law; negligently continued prescribing amiodarone to him after he began suffering adverse side effects; and negligently prescribed amiodarone to him for long-term use. (Doc. 1-1 at 25–26). While the Complaint does not provide specific dates on which the doctors treated Mr. Dixon or prescribed the amiodarone, it alleges the Defendant physicians committed the negligent acts in the months leading up to Mr. Dixon's death on February 18, 2016.

Defendant Eon Labs and Teva Pharmaceuticals argue that all of Plaintiff's claims against the Defendant physicians arise under the Alabama Medical Liability Act, Ala. Code § 6-5-540 *et seq.*, and fail to state a claim under the Act's heightened pleading requirements. Section 6-5-551 of the Act provides

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provided liable to plaintiff . . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be

5

subject to dismissal for failure to state a claim upon which relief can be granted.

Plaintiff's wrongful death claims against the Defendant physicians arise under the AMLA, and its heightened pleading standard applies to the Complaint. So, the court must consider the heightened pleading requirement in its fraudulent joinder analysis. The court must apply the "pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court" to determine "whether it is possible that a state court would find that the complaint states a cause of action." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011).

The Supreme Court of Alabama has explained that § 6-5-551 requires plaintiffs to "give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). But, "[i]f the complaint affords the defendant health care provider fair notice of these essential elements, the court should strive to find that the complaint" satisfies the Act's heightened pleading requirements. *Id.*

In *Mikkelsen*, the court acknowledged that no prior cases specifically dealt with § 6-5-551's pleading requirements, and took advantage of the opportunity to clarify the law. *Id.* In conducting its analysis, the court reviewed the facts in the complaint. The court noted the plaintiff's allegation that the defendant physician

negligently failed to warn the patient or her family that she should not drive while suffering from a particular mental disorder or while taking the medication that he had prescribed her. The court also considered the plaintiff's allegation that the physician's negligence caused the car accident that gave rise to the lawsuit. The court determined these allegations satisfied the AMLA's pleading requirements and provided the defendant physician fair notice of the alleged negligent conduct and resulting harm.

The court in *Mikkelson* also found the complaint satisfied the AMLA's "when" and "where" requirements despite the plaintiff's apparent failure to provide any specific date or place of the physician's alleged negligence. While the court noted specific examples of the plaintiff's allegations of the physician's negligent act and the resulting harm, the court simply stated, without providing any specific examples, that the complaint "sufficiently alleged the date and place of" the physician's negligent act. *Id.* Apparently, the court was satisfied that the complaint asserted that the physician's negligence occurred "prior to" the plaintiff's automobile accident. *Id.*

Plaintiff's Complaint in this case is no less informative than the complaint in *Mikkelson*. The Complaint alleges that the Defendant physicians negligently treated Mr. Dixon by prescribing amiodarone for off-label use, prescribing the drug without informing him of the risks involved, and continuing to prescribe it to him

7

despite its adverse effects. The Complaint further alleges the doctors' negligence caused Mr. Dixon's death on February 18, 2016. And while the Complaint does not provide specifically when or where the negligence occurred, it clearly explains that it occurred during the physicians' treatment of Mr. Dixon in the months leading up to his death in February 2016.

In light of the court's analysis in *Mikkelson*, and its admonition that courts "should strive to find that the complaint" satisfies the Act's heightened pleading requirements, this court finds that Plaintiff's Complaint satisfies § 6-5-551 because it "affords the defendant health care provider[s] fair notice" of the alleged misconduct, the harm it caused, and when and where it occurred. *Id.* at 1384.

Defendants Eon and Teva assert that courts have "repeatedly" held that "sparse and conclusory allegations" like those in Plaintiff's Complaint "do not satisfy the AMLA." (Doc. 33 at 14). They cite two cases to support that proposition, neither of which advances their argument.

The first case is *Murray v. Prison Health Servs., Inc.*, 112 So. 3d 1103, 1107 (Ala. Civ. App. 2012). There, the complaint did not satisfy the AMLA's pleading requirements because it asserted only that the defendant "health-care provider 'ha[d] knowingly and willingly violated' the AMLA" and alleged no "specific act of malpractice." *Id. Murray* is clearly distinguished from the case at bar because

Plaintiff has alleged how the Defendant physicians were negligent, and how their negligence injured Mr. Dixon.

Defendants also cite *Looney v. Moore*, No. 2:13-CV-00733-KOB, 2014 WL 234676, at *11 (N.D. Ala. Jan. 22, 2014), a case that is also easily distinguished from the present case. In *Looney*, this court held the complaint was deficient because it failed to "describe when, how, or by whom the [injured patients] were treated" or "any other details that would be relevant to the treatment, care, monitoring, observing, discovering, and diagnosing of the [patients]." *Id.* Thus, the complaint omitted basic information required to give the defendant healthcare providers fair notice of the plaintiffs' claims against them. In contrast, Plaintiff's Complaint in the present case provides the information that was glaringly absent in *Looney*.

This court concludes that Plaintiff's Complaint more closely aligns with the satisfactory complaint in *Mickelson* than the deficient complaints in *Murray* and *Looney*. Therefore, the court finds, at the very least, "a possibility" that an Alabama court "would find that the complaint states a cause of action" against the non-diverse Defendants in this case." *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003). Consequently, this court "must find that the joinder was proper." *Id.*

*Mutually Exclusive Claims*

Defendants also assert that Plaintiff's claims against the Defendant physicians and pharmaceutical companies necessarily fail because they are mutually exclusive. More specifically, they argue that the

> thrust of the Complaint is that the physicians were unaware that prescribing amiodarone for atrial fibrillation carried health risks because the [pharmaceutical defendants] deceptively concealed that information. Given that the physicians' lack of knowledge of the alleged dangers of the off-label use of amiodarone . . . is the crux of Plaintiff's liability theory with respect to the [Defendant physicians], Plaintiff's conclusory allegations that the Medical Malpractice Defendants failed to adhere to acceptable standards of care by prescribing amiodarone to the decedent makes no sense.

(Doc. 33 at 15).

Even if the court ignores the possibility of alternative pleadings, in *Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1190–91 (S.D. Ala. 2006), the court rejected the same argument under similar circumstances. As the court in *Betts* noted, the proposed argument is logical: "[w]hen the allegations of such a complaint negate the manufacturer as a source of information about the drug's risks, it follows that the physician could not have known of the risks he failed to address." *Id.* But, "[t]he situation is entirely different when the complaint alleges that the physician knew or should have known of the drug's dangers from other sources." *Id.* "'[A] specific allegation as to the source of such knowledge'" removes the apparent

contradiction in the pleadings. *Id.* (quoting *Omobude v. Merck & Co.*, 2003 U.S. Dist. LEXIS 27006 at *6–7 (S.D. Miss.2003)).

In *Betts*, the court found that the complaint's reference to "studies and reports in the medical literature, as well as governmental and health organizational advisories" . . . "support[ed] and even warn[ed] of a link between" a particular medication and the adverse effects suffered by the patient. *Id.* at 1191. Therefore, because the complaint alleged that sources existed other than the pharmaceutical defendants from which the physician learned or could have learned of the drug's risks, the complaint provided sufficient facts to establish the physician's "actual or constructive awareness of the risks of which he failed to warn." *Id.* Consequently, the manufacturer's alleged concealment did not negate the physician's duty to warn, and the claims were not mutually exclusive. *Id.*

In the present case, Plaintiff's Complaint references governmental health organizational advisories similar to those in the complaint in *Betts*. For example, the Complaint states that the FDA's Adverse Event Reporting System flagged "numerous instances of catastrophic injuries caused by ingestion of amiodarone," and it alludes to "FDA warnings and thousands of adverse patient experiences" regarding the medication. (Doc. 1-1 at 16). So, the Complaint asserts that amiodarone's dangers were well-documented, which allows for the possibility that the Defendant physicians had actual or constructive knowledge of the drug's risks

11

while treating Mr. Dixon. Thus, following the court's sound reasoning in *Betts*, Plaintiff's allegations that Eon and Teva concealed the dangers of amiodarone and her allegations that the Defendant physicians breached their *own* duties regarding the drug's dangers are not mutually exclusive.

### *Fraudulent Misjoinder*

Defendants also argue that the court should deny Plaintiff's motion to remand because Plaintiff fraudulently misjoined the resident Defendants. Fraudulent misjoinder occurs when a plaintiff joins claims against a non-diverse defendant to the claims against a diverse defendant, even though the claims share "no real connection." *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1289 (11th Cir. 1998). To establish fraudulent misjoinder, Defendants must show not only that the Plaintiff misjoined the resident defendants, but that the misjoinder is "so egregious as to constitute fraudulent joinder." *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274–75 (M.D. Ala. 2001) (citing *Tapscott v.MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

Rule 20(a)(2) of the Federal Rules of Civil Procedure allows a plaintiff to join other defendants to an action when the claims arise out of the same transaction or occurrence and present a common question of law or fact. Fed. R. Civ. P. 20(a). Here, Plaintiff sued the manufacturers, distributers, pharmacy, and medical doctors

associated with the amiodarone that allegedly caused Mr. Dixon's death. While Plaintiff's claims against the pharmaceutical companies are distinguished from the medical malpractice claims against the non-diverse physicians, Plaintiff seeks recovery for one single injury—Mr. Dixon's wrongful death, caused by amiodarone.

Further, common questions of law and fact exist among the claims against both sets of Defendants regarding the known risks of using amiodarone, the failure to warn patients of those risks, Mr. Dixon's use of amiodarone, and the injuries he suffered as a result. *See, e.g., Ash v. Providence Hosp.*, No. 08-0525-WS-M 2009 WL 424586, at *8 (S.D. Ala. Feb. 17, 2009) (holding that while plaintiff's claims against pharmaceutical defendants were distinguishable from those against medical providers, the claims overlapped because plaintiff sought recovery for a single injury and shared common issues of fact or law regarding the causes, nature, and extent of plaintiff's injuries).

The removing Defendants did not show that Plaintiff's joinder of the non-diverse Defendants constitutes misjoinder, much less "egregious" misjoinder so as to constitute fraudulent joinder. Plaintiff's claims against all Defendants arise out of the same occurrence and involve common questions of law and fact. Consequently, the removing Defendants failed to establish that the court should deny Plaintiff's motion to remand because she fraudulently misjoined the resident

Defendants.

*Plaintiffs' Request for Costs and Fees Pursuant to 28 U.S.C. § 1447(c)*

Plaintiff seeks to recover costs and expenses she has incurred as a result of Defendants' removal pursuant to 28 U.S.C. §1447(c). The Supreme Court has established that "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The Eleventh Circuit has further explained that, "the reasonableness standard was ultimately the result of balancing the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Bauknight v. Monroe Cty*, 446 F.3d 1327, 1329 (11th Cir. 2006).

Here, the removing Defendants' argument based on the AMLA's heightened pleading requirements reflects an overly strict interpretation of those requirements, as indicated by the very cases they cited. As explained above, Plaintiff's Complaint is no less informative than the complaint that the Supreme Court of Alabama deemed sufficient in *Mikkelson*. Also, the Complaint is substantially more informative than the deficient Complaints in *Murray* and *Looney*. In light of such

14

clear case law, the court finds the removing Defendants lacked an objectively reasonable basis for arguing that Plaintiff's Complaint did not meet the AMLA's pleading standards.

The removing Defendants' argument that Plaintiff's claims necessarily fail because they are mutually exclusive is equally unfounded in the case law. Given the substantially similar argument and facts in *Betts v. Eli Lilly & Co.*, 435 F. Supp. 2d 1180, 1190–91 (S.D. Ala. 2006), this court finds that the removing Defendants lacked an objectively reasonable basis for removal on the premise that Plaintiff's claims were mutually exclusive.

Finally, the court finds no objectively reasonable basis for the removing Defendants' argument involving fraudulent misjoinder. The Defendants failed to provide any case law or persuasive argument that Plaintiff's claims against the pharmaceutical Defendants bore no connection with those against the Defendant physicians; Plaintiff alleges that *all* the Defendants' actions contributed to Mr. Dixon's death from amiodarone. Therefore, the removing Defendants had no reasonable basis for alleging misjoinder under Rule 20(a)(2) of the Federal Rules of Civil Procedure, much less "egregious" misjoinder so as to constitute fraudulent misjoinder.

Therefore, the court will **GRANT** the Plaintiff's request for attorneys fees and costs pursuant to § 1447(c). The court reserves jurisdiction for the sole purpose

15

of awarding those fees and costs. *See Cooter & Gell v. Harmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction."); *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 205 F.3d 352, 257 (6th Cir. 1997) (District court had jurisdiction to consider plaintiff's application for attorneys fees after it remanded the case); *Montgomery & Larmoyeux by Montgomery v. Philip Morris, Inc.*, 19 F.Supp. 2d 1334 (S.D. Fla. 1998) (District court retained jurisdiction to award attorneys fees incurred as result of removal after case had been remanded).

Therefore, the court will DIRECT Plaintiff to file with the court an accounting of the costs and fees that are recoverable pursuant to 28 U.S.C. § 1447(c) on or before August 17, 2018. The removing Defendants' Response as to the reasonableness of those fees, if any, will be due on or before August 24, 2018.

**IV. CONCLUSION**

The removing Defendants did not establish by clear and convincing evidence that Plaintiff's Complaint fails to state a possible cause of action against the resident Defendants. They also failed to show that Plaintiff fraudulently misjoined the resident Defendants. Therefore, the court will GRANT Plaintiff's motion and REMAND this case to the Circuit Court of Jefferson County, Alabama.

The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** this 2nd day of August, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE